MARGARET NOFFSINGER WENGER, Appellee, v. CENTRAL LIFE ASSURANCE SOCIETY (MUTUAL), Appellant.

No. 43585.

JANUARY 19, 1937.

Crissman & Bleakley, for appellee.

1270

John D. Randall, Fred P. Carr, A. R. Shepherd, and George F. Malcolm, for appellant.

HAMILTON, J.—This is a suit brought by the beneficiary named in a policy of insurance for the face amount of $3,000 upon the life of Milo E. Wenger, husband of plaintiff, which policy contained provisions for double insurance benefits for accidental death. The contest is over the right to recover double insurance benefits; there is no dispute over the face amount. Pertinent provisions of the policy necessary to an understanding of this opinion are as follows:

"This contract is made in consideration of the payment of Sixty-four and 65/100 Dollars being the premium for the first year's insurance, * * * and the payment of a like amount upon the 15th day of September in each year hereafter until the death of the insured. * * * The above premium includes $3.45 for Total and Permanent Disability Benefits and $4.50 for Double Indemnity."

Under the heading "Double Insurance Benefits" it is provided:

"The company will pay double the face of the policy provided premiums have been duly paid and this policy is then in force and is then surrendered properly released. * * * In event of non-payment of the premium due on this policy this benefit automatically ceases and no further premiums are payable. * * * In event any premium on this benefit remains unpaid the company will cancel this provision."

Under the heading "Payment of Premium" it is provided:

"Except as herein provided the payment of premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable."

A grace of 31 days is granted by the policy for the payment of every premium after the first, during which period the insurance shall continue in force. Under the heading "Option on Surrender or Lapse" it is provided:

"After this policy shall have been in force three full years,

the owner, within one month after any default, may surrender this policy and elect:

(a) to accept the value of this policy together with the reserve on any existing paid up additions in cash, or

(b) to have the insurance continued in force from date of default, without the right to loans, for its face amount and outstanding dividend additions less any indebtedness to the Company hereon but without total and permanent disability or double insurance benefits, or

(c) to purchase non-participating paid-up insurance, payable at the same time and on the same conditions as this policy but without total and permanent disability or double insurance benefits. * * *

If the owner shall not, within one month from default, surrender this policy to the Company at its Home Office for its cash surrender value of paid-up insurance, as provided in options (a) and (c), the insurance will be continued as provided in option (b)."

The policy contained the following provision with reference to reinstatement:

"This policy upon evidence of insurability satisfactory to the company may be reinstated by payment of arrears of premiums with interest at six per centum per annum."

The issue to be determined arises on the pleadings, the appeal being from an order sustaining plaintiff's motion to strike a substantial portion of the defendant's answer. The motion is in two divisions. The first division strikes at that portion of the defendant's answer which sets up the provisions of the policy, disclosing that in default of payment of premium, double insurance benefits were forfeited and ceased, and the further provision of the policy relating to options where the policy had lapsed for failure to pay premium, and alleged the fact that the insured having failed to make any election, the insurance under option (b) was continued in force for the face amount without double insurance benefits, less any indebtedness to the company thereon, the grounds of this division of the motion being that the allegations of the answer contained a sham defense setting up irrelevant and redundant matter, in that the allegations of the answer set up a defense, namely, failure to pay premium, inconsistent with the reason for denying liability set forth in a letter from

the company, which it is alleged is not permissible under the rule of law that where a party gives a reason for his conduct and decision touching anything involved in controversy, he cannot after litigation has begun change his ground and his defense upon another and different consideration, that he is not thus permitted to mend his hold and is estopped from doing so. Donley v. Porter, 119 Iowa 542, 545, 93 N. W. 574.

Omitting the formal parts the letter reads:

"Gentlemen:

"On the writer's return to the office your letter of December 18 enclosing proofs of death on the above policy, has been referred to the writer for attention.

"For your information, this policy lapsed because of Mr. Wenger's failure to pay the premium originally due September 15, 1934, on the extended due date, namely, November 15, 1934. Because of Mr. Wenger's failure to exercise any of the options on surrender or lapse provided for in the policy, the insurance for the face of the policy, less the policy loan indebtedness, namely $2816.00 was continued without double insurance benefits for some three years and eleven months from September 15, 1934, under the provisions of Option (b).

"On November 26, 1934, Mr. Wenger handed the Cashier in our Cedar Rapids agency, an application for reinstatement, a copy of which is herewith enclosed, with a remittance of $5.00 for an additional extension of time, provided the application for reinstatement was approved. You will observe that the application for reinstatement contains a specific agreement that reinstatement shall not be in effect unless and until the application is approved by the Society at its home office during the applicant's lifetime and continued good health. The application for reinstatement and the remittance were forwarded to our home office, reaching this office on November 28, 1934. At the time when Mr. Wenger was killed, on November 30, 1934, no action had been taken by our company on the application for reinstatement. Hence the policy had not been reinstated at the time of Mr. Wenger's death, and we cannot approve the claim for double insurance benefit. We are, of course, ready at any time to pay the beneficiary the sum of $2816 due as above stated, and we are also ready and willing to pay to the executor or administrator of Mr. Wenger's estate the $5.00 remittance with interest from the

time when it was handed to the Cashier of our Cedar Rapids agency.

"Will you kindly advise us whether such a settlement is satisfactory and call on us for any further information or explanation which you may desire regarding this matter?"

Comparing this letter with the allegations of the answer which are asked to be stricken as inconsistent with the letter, we find no inconsistency in the claims of the company as contained in the answer with those contained in said letter. The answer goes a little more into detail, but the subject matter is the same. It is the contention of appellee that the only reason given in the letter for denying liability is the fact that the company had not acted upon the application for reinstatement. We think this is an unreasonable and unwarranted interpretation of the language used in said letter. The company had just received proofs of loss wherein plaintiff was claiming $6,000 less the amount of the loan, and the letter was in response to this matter. Clearly, the purpose of the letter was to point out the reason why there was nothing due on this policy under the double liability benefit clause, and the very first premise for the discussion in the letter is that the policy had lapsed for failure to pay premium when due, and insofar as double liability benefits were concerned this right had been lost. The letter then recited what had been done by Mr. Wenger in an effort to reinstate the lapsed policy and in this connection calls attention to the specific allegations in the application for reinstatement that it was necessary for the company to act on the matter, and that before the company acted the insured's death occurred, and the policy having lapsed and not having been reinstated, consequently there was no liability. We see no such inconsistency in the statements contained in the letter and the allegations of the answer stricken to justify application of the rule of law contended for. Thompson v. Iowa Traveling Men's Assn., 179 Iowa 603, 161 N. W. 655.

The answer also alleged and set forth the following statement contained in the application for reinstatement:

"I further agree that if reinstatement is applied for herein, it shall not be in effect by reason of any cash payment or other settlement made in connection with this application or in any other manner, unless and until this application shall have been

approved by the Society at its Home Office during my lifetime and continued good health.''

And in the second division of plaintiff's motion, this allegation of the answer was asked to be stricken because the same was a pleading of irrelevant and redundant matter and because the policy contained no such statement as a condition precedent to reinstatement, and that the defendant had no right to impose nor add to the conditions to the right of reinstatement, conditions other than those contained in the original contract of insurance, and that the same were without consideration and discriminatory. The crucial question to be decided, as appellee contends, and as stated in her brief is:

''Can an insurance company enter into a contract of insurance with a person wherein it promises and agrees as in the policy now before the Court: 'This policy upon evidence of insurability satisfactory to the company may be reinstated by payment of arrears of premiums with interest at six per centum per annum,' and thereafter when the occasion for reinstatement arises legally and rightfully incorporate into an application for reinstatement the following words and provisions: 'I further agree that if reinstatement is applied for herein, it shall not be in effect by reason of any cash payment or other settlement made in connection with this application or in any other manner, unless and until this application shall have been approved by the society at its home office during my lifetime and continued good health.' ''

As we comprehend the fact situation presented by the pleadings (and we must look to the pleadings for the facts in passing on this matter), this would be the crucial question had the assured attempted reinstatement in exact accord with the stipulations in the policy. This he did not do. Instead he proffered to the Cedar Rapids agency an application for reinstatement, accompanied by a health certificate and only $5.00. The annual premium which was in arrears was $64.65. In order to claim the privilege of reinstatement under the terms of the policy this sum with interest would have to be paid. Surely, when he tendered something other and different than what the terms of the policy required, the company had the right to insist that before it was bound thereby, the new and different terms be approved by the home office, while the applicant was alive and in

good health. That is all this answer tendered. The motion to strike should have been overruled. The decision of the question propounded by appellee will be reserved for some future time when, and if, presented.—Reversed.

RICHARDS, C. J., and MITCHELL, PARSONS, ANDERSON, STIGER, DONEGAN, and KINTZINGER, JJ., concur.